# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
### EASTERN DIVISION

CLARENCE CLAY                                                                      PETITIONER

v.                                          NO. 2:06CV00119 HDY

LINDA SANDERS, Warden, FCI                                              RESPONDENT
Forrest City, Arkansas

<u>MEMORANDUM OPINION AND ORDER</u>

The record reflects that in 1982, petitioner Clarence Clay ("Clay") was diagnosed

with some form of mental illness by officials with the United States Army.  <u>See</u> Document

1, Attachment 4 at 1.  In 1999, he was indicted in the United States District Court for the

Middle District of Alabama with several criminal offenses.  In 2003, he was sentenced to

fifty-six months in the custody of the Federal Bureau of Prisons ("BOP") for conspiracy

to distribute marijuana, cocaine base, and cocaine hydrochloride; and for the unlawful

use of a communication facility.  Upon entering the custody of the BOP, the following

occurred:

> [BOP] staff initiated the classification process to determine the
> appropriate level [of] correctional facility to designate … Clay for service
> of his federal sentence. … Clay was given a Custody Classification Score of
> minimum security with in custody.  However, based upon his mental health
> history, … Clay was assigned a … Management Variable.

<u>See</u> Declaration of Daniel R. Severson, Document 4, Attachment 2 at 2.  In 2004, Clay was specifically assigned to the custody of respondent Linda Sanders ("Sanders") at the Federal Correctional Complex - Low in Forrest City, Arkansas.

Within one year of Clay's arrival at FCC Forrest City, he began an attempt to have a management variable removed from his prisoner designation.[1]  He first wrote a Dr. Quick at FCC Forrest City requesting the removal of the management variable; Clay's request was as follows:

> I am requesting that the medical hold be removed off of me.  There was a medical hold placed on November 29, 2004, we discussed this on July 13, 2005.  My understanding is that the hold was only to last for six (6) months when I was designated here on November 29, 2004.  I have been here for almost ten (10) months.  I have had no problems.  This is a formal request to ask for your assistance to remove the hold so that I may be cleared to transfer closer to home.  My custody level is zero (0) and that is the lowest it could [possibly] go, yet I am being held inconsistent with my custody level.  …

<u>See</u> Document 1, Exhibit 1 at 1.  The record does not contain a response to Clay's request from Dr. Quick or an associate.

Clay then began the BOP grievance process by informally complaining to officials at FCC Forrest City.  In his informal request, he requested the following:

---

[1]

As the Court will more fully explain below, a management variable is sometimes added to a prisoner's classification score to "ensure placement in the appropriate security level institution.  [The management variable is] required when placement has been made and/or maintained at an institution level inconsistent with the inmate's scored security level."  <u>See</u> BOP Program Statement 5100.07, Chapter 7 at 9.

> To have the medical hold removed by the Psychology Dept.   The hold placed on me on November 29, 2004 by the designation dept.  My attorney and I were informed that the hold would only last (6) months, as long as I don't violate any of the prison rules or get any shots.  I have been here over (10) months and have a custody level of zero (0), the lowest possible score.  I am being held inconsistent with my custody level. …

See Document 1, Exhibit 2 at 1.  Officials at FCC Forrest City rejected Clay's request and provided the following reason: "Based on … Clay's mental health condition, Psychology Services does not consider him appropriate for Camp placement.  This condition is unchanging and not likely to result in your Camp placement in the foreseeable future."  See Id.[2]

Clay next formally complained to officials at FCC Forrest City.  His formal complaint was substantially similar to his informal complaint.  His formal complaint, though, was eventually denied by Sanders; the denial contained the following representations:

> This is in response to your Request for Administrative Remedy … in which you contend your continued placement at FCC Forrest City, Low, is not appropriate.

> For relief, you request a "medical hold" be removed by Psychology Services in order to permit your placement at a Minimum Security facility.

---

[2]

The BOP website (www.bop.gov) provides, in part, the following with regard to "camps:" "A number of BOP institutions have a small, minimum security camp adjacent to the main facility.  These camps, often referred to satellite camps, provide inmate labor to the main institution and to off-site work programs."

A review of your case has revealed you currently suffer a serious form of mental illness.  For that reason, Psychology Services considers you a poor candidate for placement at a Minimum Security facility.

<u>See</u> Document 1, Exhibit 3 at 2.

Clay appealed the denial of his request to a BOP Regional Director.  In his appeal,

Clay represented the following:

I am appealing the denial to region for the following reason.  The reason that they stated that I was denied to have the hold removed from me placed by the Designation Dept. on November 29, 2004 is that I suffer a serious form of Mental Illness, and that I would be a poor candidate for placement at minimum security facility.  The illness they are discussing was diagnosed on December 6, 1982 over 23 years ago by the U.S. Army.  Since that time I have had positions which have required me to deal with the public in great magnitude for the past 20 years.  To be specific I have managed several casual dining restaurants and I was Food and Beverage Director for Embassy Suits Hotel and I have also been a District Manager for several major corporations.  I have a Degree in Business Administration with emphasis on Hotel and Restaurant management.  I owned and operated a large scale catering service which employed up to 100 employees.  I was also partner[] [in] a small hotel and was responsible for the day to day operation of it.  I have been marred for over 21 years and have (3) kids and maintain a normal family life.  The court system allowed me to be free on bond for over 5 years while this case was pending, once my case became final, I was then allowed to self-surrender to the [BOP] over 350 miles away from my home.

Since being at the prison I have only conducted myself in a professional manner to staff and fellow inmates.  I have not violated any of the rules and have not received any shots since my arrival on November 29, 2004.  Furthermore my custody level is (0), the lowest possible score which shows my character.  I am not currently on any medication and have not been on any medication for over 20 years because there is no need for it.  For the above stated reasons I am requesting the denial be reversed and I be transferred immediately to a camp in my region. …

-4-

<u>See</u> Document 1, Exhibit 4 at 1-2.  The Regional Director rejected Clay's appeal and

provided the following reason:

> You are appealing the Warden's response to your complaint [that] a hold
> has been inappropriately placed on you, resulting in denial of a transfer to
> a minimum security facility.  You are requesting a transfer to a Camp
> facility.
>
> Review of this matter reveals your case was handled in accordance with
> Program Statement 5100.07, <u>Security Designation and Custody</u>
> <u>Classification Manual</u>.  Specifically, you are a minimum security offender,
> with a Greater security management variable due to mental health
> concerns.  As a result of your mental health issues, you represent a greater
> security risk than your assigned security level.  Consequently, you are not
> eligible for placement in a minimum security facility as long as this
> management variable remains in effect.  Your case will be reviewed
> periodically during regularly scheduled program reviews.  Staff will
> carefully consider all relevant factors before reaching a conclusion with
> regard to removal or maintenance of this management variable.

<u>See</u> Document 1, Exhibit 4 at 3.

Clay appealed the denial of his request to the BOP Office of National Inmate

Appeals.  The representations contained in his appeal were substantially similar to his

earlier appeals, although he did add the following:

> I also spoke to Dr. Quick in the Psychology Dept. here at FCC Forrest City
> on December 19, 2005 and he informed me that the medical hold has been
> removed.  I further read the Program Statement 5100.7 and viewed the
> management variable expiration table (Table 7-3).  That table is consistent
> with what was told to me and my attorney on November 29, 2004 when I
> self-surrendered, which was the hold was only supposed to last 6 months,
> as long as I didn't have any disciplinary problems.  The hold has been on
> me for 15 months, unsupported by any disciplinary problems.

<u>See</u> Document 1, Exhibit 5 at 1.   An Administrator for the Office of National Inmate

Appeals rejected Clay's appeal and provided the following reason:

> This is in response to your Central Office Administrative Remedy in which
> you appeal the Warden's denial of your request to transfer to a camp
> [within] your region.
>
> The issue you raise falls within the authority of the Warden and Regional
> Director per Program Statement (P.S.) 5100.07, <u>Security Designation and
> Custody Classification</u>.   The intent of P.S. 5100.07 is to allow staff to use
> professional judgment in decisions involving custody classifications.   P.S.
> 5100.07 states that in circumstances where an inmate represents a greater
> security risk (i.e., pending charges, detainer, escape risk but no DHO
> finding, etc.) than their assigned security level, they may be placed in an
> institution outside normal guidelines, and the Greater Security MV shall
> apply.
>
> Staff reviewed your suitability for camp placement and determined you
> required greater security than what is afforded at a Minimum security
> facility based upon your mental health issues.   Consequently, a decision
> was made to apply a Greater Security Management Variable to your
> Custody Classification scoring.   The Management Variable of Greater
> Security justifies housing you in an institution not consistent with your
> security level.   Your Unit Team will continue to review your eligibility for
> placement in a Minimum security facility and custody classification during
> regularly scheduled program reviews.   We find this decision to be
> appropriate and in accordance with policy.   P.S. 5100.07 does not entitle
> you to placement in a lower security level facility.

<u>See</u> Document 1, Exhibit 6 at 1.

In May of 2006, Clay commenced the proceeding at bar by filing a petition for writ

of habeas corpus pursuant to 28 U.S.C. 2241.   He maintained in his petition that the BOP

has erroneously assigned him a management variable, the result of which has prevented

him from obtaining an assignment to a BOP camp.  He asked that the management variable be removed and the BOP directed to assign him to a BOP camp "nearer his release residence."  See Document 1 at 2.

In June of 2006, Sanders filed an answer to Clay's petition.  Sanders maintained, in sum, that Clay had been properly assigned the management variable "based upon [his] documented history of [s]chizophrenia, paranoid type behavior," see Document 4 at 2; was properly classified; and was not entitled to a camp placement.

In June of 2006, Clay filed a response to Sanders' answer.  The response was instructive for two reasons.  First, Clay maintained that the actions of the BOP violated the provisions of the Americans With Disabilities Act ("ADA") and the Rehabilitation Act of 1973 ("Rehabilitation Act") because the BOP was using his alleged mental illness to support his prison classification.  Second, he maintained that the BOP had changed its justification for classifying him; specifically, he maintained that the BOP initially justified its classification pursuant to the "medical or psychiatric" management variable but later changed the classification to the "greater security" management variable.

In turning to address the proceeding at bar, the Court makes note of two matters.  First, Clay has commenced this proceeding pursuant to 28 U.S.C. 2241.  That statute permits a prisoner to challenge the execution of his sentence in a habeas corpus proceeding.  See Matheny v. Morrison, 307 F.3d 709 (8th Cir. 2002).  The Court assumes, without deciding, that he is challenging the execution of his sentence in this proceeding.

Second, "[a] prisoner has no constitutional right to placement in a particular penal institution." See Antonelli v. Sanders, 2006 WL 667964 at 2 (E.D.Ark. 2006) [citing Olim v. Wakinekona, 461 U.S. 238 (1983). With regard to a prisoner's classification status, it appears to be well settled that the prisoner has "no legitimate statutory or constitutional entitlement sufficient to invoke due process." See Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976). Instead, transfers and prison assignments are typically functions within the wide discretion of the BOP. See Olim v. Wakinekona, supra.

It is against the foregoing backdrop that the Court turns to address the proceeding at bar, one governed in large part by BOP Program Statement ("PS") 5100.07, Security Designation and Custody Classification. The stated purpose of PS 5100.07 is to transmit a manual for designating, and re-designating, a federal prisoner to the appropriate federal penal institution. The prisoner is designated, or re-designated, based, in part, on "security criteria" and "other correctional administrative factors." See PS 5100.07, Chapter 1 at 1. In so designating a prisoner, BOP officials are authorized to use management variables. PS 5100.07 describes management variables in the following manner:

> Management Variables are applied to reflect and support the professional judgment of Bureau staff in order to ensure placement in the most appropriate security level institution. They are required when placement has been made and/or maintained at an institution level inconsistent with the inmate's scored security level.

<u>See</u> PS 5100.07, Chapter 7 at 9.  Two of the management variables are "medical or psychiatric" and "greater security."  The former management variable provides the following:

> An inmate who has a history of or is presently exhibiting psychiatric problems may need an initial designation to a psychiatric referral center. Similarly, documented information reflecting that the inmate may need medical or surgical treatment may require a designation to a medical referral center. …  **When the need for medical/psychiatric treatment causes placement outside normal guidelines, this Management Variable shall apply.**

<u>See</u> PS 5100.07, Chapter 7 at 12.  [Emphasis in original].  The Management Variable Expiration Table provides that the length of this management variable is six months.  <u>See</u> PS 5100.07, Chapter 7 at 15.  The "greater security" management variable provides the following:

> There may be security concerns which are not adequately reflected in the classification scheme.  **In circumstances where an inmate represents a greater security risk (i.e., pending charges, detainer, escape risk but no DHO finding, etc.) than their assigned security level, they may be placed in an institution outside normal guidelines, and this Management Variable shall apply.** …

<u>See</u> PS 5100.07, Chapter 7 at 13.  [Emphasis in original].  The Management Variable Expiration Table provides that the length of this management variable shall be "[a]t the discretion of the Regional Director upon recommendation from [the] institution staff [and] can be extended indefinitely."  <u>See</u> PS 5100.07, Chapter 7 at 15.

For purposes of this Memorandum Opinion and Order, the Court accepts as true every factual representation contained in Clay's administrative grievances and in the petition at bar.  For instance, the Court accepts as true that it was more than twenty-four years ago that he was diagnosed with some form of mental illness by officials with the United States Army; that he subsequently worked successfully in the private sector for approximately twenty years; that he maintained a stable home; that once indicted, he was allowed to remain free on bond for over five years; that once sentenced, he was allowed to self-report; that "[s]ince being at the prison, [he has] only conducted [himself] in a professional manner to staff and fellow inmates," see Document 1, Exhibit 4 at 2; and that his "custody level is [zero], the lowest possible score ..., see Id. Nevertheless, the Court will not direct to the BOP to remove, or otherwise re-evaluate, the management variable assigned to Clay.  The BOP obviously has a concern about his mental health that is not adequately reflected in the classification scheme.  The Court has no idea what the specifics of the concern are, but the BOP need not articulate the specifics.  It appears to be true that the BOP initially assigned him a "medical or psychiatric" management variable but changed that designation to a "greater security" management variable once the six month period for the former management variable expired.  The Court is unable to see how doing so violated a right or privilege enjoyed by Clay.  Instead, the decision to change the management variable was within the wide discretion the BOP has in classifying prisoners with the federal penal system.

With regard to the "greater security" management variable, it is true that a prisoner's mental health is not similar to the examples cited within that management variable. Specifically, a mental health concern appears to be different than "pending charges, [a] detainer, [or an] escape risk." See PS 5100.07, Chapter 7 at 13. The examples, though, are just that, examples, and do not appear to be the only situations in which the BOP can assign the "greater security" management variable to a prisoner. There are undoubtedly other situations in which the BOP can assign that management variable. Is a concern about a prisoner's mental health one of those situations? The Court need not answer that question because the answer is surely within the wide discretion afforded the BOP in classifying prisoners. Thus, the Court cannot say that the BOP improperly assigned the "greater security" management variable to Clay.

In conclusion, the Court finds that the decision to change the management variable assigned to Clay, and the "greater security" management variable now assigned to him, was within the wide discretion afforded the BOP in classifying prisoners with the federal penal system. Although it is possible that he is free of the mental impairment diagnosed by the United States Army twenty-four years ago, it is for the BOP to make that determination, not the federal courts. His petition is therefore denied and dismissed with prejudice, and judgment will be entered for Sanders.[3]

_____

[3] The Court finds no merit to Clay's assertions that the actions of the BOP violated the provisions of the ADA or the Rehabilitation Act.

IT IS SO ORDERED this ___22___ day of August, 2006.


_____
UNITED STATES MAGISTRATE JUDGE